Slip Op. 16 - 87

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., *et al.*,<br><br>          Plaintiffs,<br><br>               v.<br><br>UNITED STATES,<br><br>          Defendant. | Before: Donald C. Pogue,<br>          Senior Judge<br><br>Court No. 15-00023 |

| | |
|---|---|
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., *et al.*,<br><br>          Plaintiff,<br><br>               v.<br><br>UNITED STATES,<br><br>          Defendant. | Before: Donald C. Pogue,<br>          Senior Judge<br><br>Court No. 15-00024 |

OPINION and ORDER

[Redetermination affirmed in part and remanded in part.]

Dated: September 19, 2016

          Kristen Smith, Arthur K. Purcell, and Michelle L. Mejia, Sandler, Travis, & Rosenberg, P.A., of Washington, DC, for Plaintiff.

          Aimee Lee, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the Defendant. With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel were Scott D. McBride, Senior Attorney, and Jessica M. Link, Attorney, Office of the Chief Counsel for

Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

   <u>Alan E. Price</u>, <u>Robert E. DeFrancesco</u>, and <u>Derick G. Holt</u>, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor.

   **Pogue, Senior Judge:** In these two actions, Guangzhou Jangho Curtain Wall System Engineering Co. Ltd. and Jangho Curtain Wall Hong Kong Ltd. (collectively "Jangho" or "Plaintiff") challenge the results of two related administrative reviews conducted by Defendant, the U.S. Department of Commerce ("Commerce") – the second administrative review of the antidumping duty ("AD") order on aluminum extrusions from the People's Republic of China ("PRC") and the second administrative review of the countervailing duty ("CVD") order on aluminum extrusions from the PRC.[1]

   Currently before the court are Plaintiff's USCIT Rule 56.2 motions for judgment on the agency record. Pls.' 56.2 Mot. for J. on the Agency R., Ct. No. 15-23, ECF No. 31; Pls.' Mot.

---

[1] <u>Aluminum Extrusions From the [PRC]</u>, 79 Fed. Reg. 78,784 (Dep't Commerce Dec. 31, 2014) (final results of antidumping duty administrative review; 2012-2013) ("<u>Final AD Determination</u>"), and accompanying Issues & Decisions Mem., A-570-967 (Dep't Commerce Dec. 31, 2014) ("<u>AD I&D Mem.</u>"); <u>Aluminum Extrusions from the [PRC]</u>, 79 Fed. Reg. 78,788 (Dep't Commerce Dec. 31, 2014) (final results of countervailing duty administrative review; 2012) ("<u>Final CVD Determination</u>") and accompanying Issues & Decision Mem., C-570-968 (Dep't commerce Dec. 22, 2014) ("<u>CVD I&D Mem.</u>").

for J. on the Agency R., Ct. No. 15-24, ECF No. 32.[2]  Plaintiff
claims that Commerce's decision to include Plaintiff's curtain
wall and window wall imports within the scope of the review was
neither in accordance with law nor supported by a reasonable
reading of the record evidence. Pl.'s Br., Ct. No. 15-23, ECF
No. 31-1, at 6-7; see Pl.'s Br., Ct. No. 15-24, ECF No. 32-1, at
1-2.  Plaintiff further argues that Commerce's decision to
assess antidumping and countervailing duties on Jangho's entries
prior to the initiation of a formal scope inquiry was not in
accordance with law. Pl.'s Br., Ct. No. 15-23, ECF No. 31-1, at
18-23; Pl.'s Br., Ct. No. 15-24, ECF No. 32-1, at 6-14.
Defendant opposes Plaintiff's motions. Def.'s Resp. to [Pls.'
Br.], Ct. No. 15-23, ECF No. 34 ("Def.'s Resp."); Def.'s Resp.
to [Pls.' Br.] ("Def.'s Resp."), Ct. No. 15-24, ECF No. 34.
Defendant-Intervenor, the Aluminum Extrusions Fair Trade
Committee ("AEFTC") concurs with and adopts by reference
Defendant's arguments. [AEFTC]'s Resp. to [Pls.' Br.], Ct. No.
15-23, ECF No. 36; [AEFTC]'s Resp. to [Pls.' Br.], Ct. No. 15-
24, ECF No. 36.  The court has jurisdiction pursuant to
§ 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended,

---

[2] See also Mem. in Supp. of [Pl.'s] Mot. for J. on the Agency R.,
Ct. No. 15-23, ECF No. 31-1 ("Pl.'s Br."); Pl.'s Mem. of P. & A.
in Supp. of Pl.'s 56.2 Mot. for J. on the Agency R., Ct. No. 15-
24, ECF No. 32-1 ("Pl.'s Br.").

19 U.S.C. § 1516a(a)(2)(B)(iii) (2012) and 28 U.S.C. § 1581(c) (2012).[3]

The court affirms in part and remands to Commerce in part for further consideration, holding that Commerce's determination to include Plaintiff's curtain wall products within the scope of the review was procedurally deficient, as it was not in accordance with the methodology set forth in Commerce's regulations, and substantively insufficient as it was not supported by a reasonable reading of the record evidence.

## BACKGROUND

I.  The Antidumping and Countervailing Duty Orders on Aluminum Extrusions

The issues presented here stem from the language of Commerce's AD&CVD Orders on aluminum extrusions from the PRC. See Aluminum Extrusions from the [PRC], 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); Aluminum Extrusions from the [PRC], 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order").  The Orders impose duties on aluminum extrusions, which are "shapes and forms" made from certain aluminum alloys, "produced by an extrusion process." AD Order, 76 Fed. Reg. at 30,650; CVD Order, 76 Fed. Reg. at 30,653.  Aluminum extrusions

---

[3] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition.

that are "described at the time of importation as parts for

final finished products" are also "include[d] in the scope" if

they "otherwise meet [this] definition of aluminum extrusions."

AD Order, 76 Fed. Reg. at 30,650-51; CVD Order, 76 Fed. Reg. at

30,654.[4]  Similarly, "aluminum extrusion components that are

attached (e.g., by welding or fasteners) to form subassemblies,

i.e., partially assembled merchandise," are also within the

scope of the order. AD Order, 76 Fed. Reg. at 30,651; CVD Order,

76 Fed. Reg. at 30,654.  In contrast, the Orders exclude

finished merchandise "containing aluminum extrusions as parts"

and "finished goods" that are "entered unassembled in a

'finished goods kit.'" AD Order, 76 Fed. Reg. at 30,651; CVD

Order, 76 Fed. Reg. at 30,654.  Subassemblies may be excluded as

well, provided that they enter the United States as part of or

as "finished goods" or "finished goods kits." AD Order, 76 Fed.

Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654.[5]

---

[4] Cf. Aluminum Extrusions Fair Trade Comm. v. United States, __
CIT __, 2016 WL 1268191, at *4 (Mar. 31, 2016) ("[T]he Orders
apply to 'extrusions,' a term that is defined expansively by the
Orders to include goods that have been processed in various ways
following an extrusion process. The term 'extrusions,' however,
is not defined in the general scope language so broadly as to
include all goods consisting of assemblies of which extrusions
are parts."

[5] See [Valeo] Final Results of Redetermination Pursuant to Ct.
Remand, Ct. No. 12-00381, ECF No. 20-1, at 8 (citing Aluminum
Extrusions from the [PRC], A-570-967 & C-570-968 (Dep't Commerce
Sept. 24, 2012) (preliminary side mount valve controls scope
ruling) at 7 (adopted unchanged in Aluminum Extrusions from the
(footnote continued)

II.  Prior Scope Rulings on Curtain Wall Products

      The scope of the AD&CVD Orders has been questioned in three previous scope rulings on curtain wall products; two are relevant here.[6]

      In the first, requested by the Curtain Wall Coalition ("CWC"),[7] Commerce determined that "curtain wall parts," defined as parts that "fall short of the final finished curtain wall that envelopes an entire building structure," including, but not limited to individual curtain wall units (i.e., "modules that are designed to be interlocked with [each other], like pieces of a puzzle"), were within the scope of the Orders. CWC Scope Ruling at 3, 10.  Jangho, as well as Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. and Yuanda USA Corporation

---

[PRC], A-570-967 & C-570-968 (Dep't of Commerce Oct. 26, 2012) (final side mount valve controls scope ruling)).

[6] The third is a scope ruling on curtain wall units with non-PRC aluminum extrusions. See Aluminum Extrusions from the [PRC], A-570-967 & C-570-968 (Dep't of Commerce March 14, 2013) (final scope ruling on Tesla curtain walls with non-PRC extrusions).

[7] The CWC is a group of three domestic companies – Walters & Wolf, Architectural Glass & Aluminum Company, and Bagatelos Architectural Glass Systems, Inc. – each "a U.S. manufacturer, producer or wholesaler of a domestic like product," i.e., "aluminum extrusions for the production of curtain wall units and parts of curtain wall systems in the United States." Aluminum Extrusions from the [PRC], A-570-967 & C-570-968 (Dep't of Commerce Nov. 30, 2012) (final scope ruling on curtain wall units and other parts of a curtain wall system) ("CWC Scope Ruling") at 2.

(collectively "Yuanda")[8] participated as interested parties, submitting comments in opposition. CWC Scope Ruling at 2. Yuanda and Jango subsequently challenged this finding before the Court of International Trade ("CIT"); the CIT affirmed. Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, __ CIT __, 961 F. Supp. 2d 1291 (2014) ("Yuanda I"). The plaintiffs appealed this decision to the Court of Appeals for the Federal Circuit ("CAFC"); the CAFC affirmed, Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 776 F.3d 1351 (Fed. Cir. 2015) ("Yuanda II").

In the second scope ruling, requested by Yuanda while Yuanda I was still pending before the CIT, Commerce determined, contrary to Yuanda and Jangho's arguments,[9] that complete curtain wall units sold "pursuant to [a] contract[] to supply [a] complete curtain wall [system]" were within the scope of the AD&CVD Orders. Yuanda Scope Ruling at 1 (footnote and internal quotation marks omitted). Yuanda and Jangho appealed this ruling to the CIT; this Court remanded twice, the first at the

---

[8] Yuanda USA Corp. is an importer and Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. is a foreign producer and exporter of curtain wall units. Id. at 1-2; Aluminum Extrusions from the [PRC], A-570-967 & C-570-968 (Dep't of Commerce March 27, 2014) (final scope ruling on curtain wall units that are produced and imported pursuant to a contract to supply curtain wall) ("Yuanda Scope Ruling") at 1-2.

[9] Jangho submitted comments in support of Yuanda's application. Yuanda Scope Ruling at 2.

request of Commerce and the second upon a finding that Commerce's determination was not in accordance with law, unsupported by substantial evidence, and arbitrary and capricious. Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, __ CIT __, 146 F. Supp. 3d 1331 (2016) ("Yuanda III"). The second redetermination on remand in the Yuanda Scope Ruling is now pending before this Court. [2d] results of Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 14-106, ECF Nos. 109-1 (conf. ver.) & 110-1 (pub. ver.).

III.   The Second Administrative Reviews

On May 1, 2013, Commerce published notice of the opportunity to request administrative review of the AD Order for the period of May 1, 2012 through April 30, 2013, and the CVD Order for the period of January 1, 2012 through December 31, 2012. Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 78 Fed. Reg. 25,423 (Dep't Commerce May 1, 2013).  At this time, with Yuanda I pending before the CIT and the Yuanda Scope Ruling pending before Commerce, the status of various curtain wall products was uncertain. Amidst this uncertainty,

Jangho requested, in accordance with 19 C.F.R. § 351.213, an

administrative review of its entries.[10]

    *A. The Antidumping Review*

      Jangho participated in the AD Review, filing a

separate rate application.[11]  Commerce selected Jangho as a

mandatory respondent and issued questionnaires.[12]  Jangho filed

its Section A Questionnaire Response, but noted that "for

reasons explained in detail to [Commerce] in the pending [Yuanda

Scope Ruling], Jangho's imported finished curtain wall units,

the product manufactured by Jangho and exported to the United

States, fall outside the scope of the aluminum extrusions

orders." [Jangho's] Sect. A Questionnaire Resp., A-570-967 (Nov.

18, 2013) ("Jangho's Sect. A Questionnaire Resp.") at A-2,

reproduced in Def.'s App., Ct. No. 15-23, ECF No. 35, at Tab 4.

---

[10] Letter from [Jangho] to [Commerce] Pertaining to Jangho
Request for Admin. R., A-570-967 (May 31, 2013), reproduced in
App. of Docs. Supp. Def.'s Resp. to [Pl.'s Br.] ("Def.'s App."),
Ct. No. 15-23, ECF No. 35, at Tab 1; Letter from [Jangho] to
[Commerce] Pertaining to Jangho Request for Admin. R., C-570-968
(May 31, 2013), reproduced in App. of Docs. Supp. Def.'s Resp.
to [Pl.'s Br.] ("Def.'s App."), Ct. No. 15-24, ECF No. 35, at
Tab 1.

[11] [Jangho] Separate Rate Application, A-570-967 (Aug. 27, 2013)
reproduced in Def.'s App., Ct. No. 15-23, ECF No. 35, at Tab 3.

[12] Aluminum Extrusions From the [PRC], 79 Fed. Reg. 36,003,
36,003 (Dep't Commerce June 25, 2014) (preliminary results of
antidumping duty administrative review and rescission, in part;
2012/2013) ("Prelim. AD Determination") and accompanying Issues
& Decisions Mem., A-570-967 (Dep't Commerce June 18, 2014) ("AD
Prelim. I&D Mem.") at 3.

Jangho emphasized that it was answering Commerce's
questionnaires "[t]o show its good faith as a mandatory
respondent . . . pending . . . the as of yet undecided scope
inquiry." Id.  Jangho also filed its Section C and Section D
Questionnaire Responses. See [Jangho's] Sect. C Questionnaire
Resp., A-570-967 (Dec. 9, 2013), reproduced in Def.'s App., Ct.
No. 15-23, ECF No. 35-2, at Tabs 23-26; [Jangho's] Sect. D
Questionnaire Resp., A-570-967 (Dec. 12, 2013), reproduced in
Def.'s App., Ct. No. 15-23, ECF No. 35-3, at Tabs 27-29.

    Following comments by Petitioner and Defendant-
Intervenor, the AEFTC, Commerce issued a supplemental
questionnaire to Jangho. AD Prelim. I&D Mem. at 3.  Rather than
respond to the supplemental questionnaire, with Yuanda II
pending before the CAFC and the Yuanda Scope Ruling recently
issued, Jangho withdrew from "active participation as a
mandatory respondent" while reserving "the right to participate
in [the] review and file comments . . . where it feels
appropriate." Letter From Jangho to Commerce, A-570-967 (Apr. 7,
2014), reproduced in Def.'s App., Ct. No. 15-23, ECF No. 35-4,
at Tab 33 at 1-2.

    Commerce, in its Preliminary AD Determination, found
that Jangho was not eligible for a separate rate because it had
not responded to the supplemental questionnaire; instead,
Commerce declared Jangho a part of the PRC-wide entity and

therefore subject to the PRC-wide rate. AD Prelim. I&D Mem. at
15.  Commerce did not address Jangho's arguments that its
merchandise should be excluded from the scope of the Orders and
that the Yuanda scope inquiry was applicable to its entries.  In
response to Commerce's Prelim. AD Determination, Jangho filed
comments, arguing again that Jangho's curtain wall (and window
wall) imports should be excluded from the scope of the Orders,
or, in the alternative, if Commerce found Jangho's curtain wall
products subject to the AD Order, that Commerce could not assess
duties retroactive to the initiation of the Yuanda Scope inquiry
(i.e., prior to May 10, 2013, thus excluding the entire period
of review). [Jangho] Case Br. [before Commerce], reproduced in
Def.'s App., Ct. No. 15-23, ECF No. 35-5, at Tab 36 at 1-2.

        In its Final AD Determination, Commerce finally
discussed Jangho's scope argument, finding the company's curtain
wall imports subject to the AD Order while acknowledging that
the determination was incomplete "because Jangho ha[d] not
fulfilled the procedural and evidentiary requirements specified
in 19 C.F.R. [§] 351.225(c)" – that is, Jangho had not formally
requested and been subjected to a scope inquiry independent of
the review. AD I&D Mem., Cmt 6 at 30; see Final AD
Determination, 79 Fed. Reg. 78,784.  As such, Commerce found
that Jangho's merchandise was subject to the review, and that

Jangho was still part of the PRC-wide entity and therefore still subject to the PRC wide rate. Id., Cmt. 6 at 31.

Commerce further found that, because liquidation of Jangho's entries had been suspended prior to the initiation of the Yuanda scope inquiry and Jangho's entries were ultimately "properly subject" to the Order and review – pursuant to the findings in both the Yuanda Scope Ruling and CWC Scope Ruling (as affirmed in Yuanda I) – 19 C.F.R. § 351.225(l)(3) "did not prohibit[] [Commerce] from assessing duties on [Jangho's] entries as a result of [the] administrative review." Id., Cmt. 5 at 26-27 (citing Yuanda Scope Ruling at 20-27; Yuanda I, __ CIT at __, 961 F. Supp. 2d at 1302-03).[13]

Commerce also found that there was no evidence on the record indicating that Jangho had imported window wall units during the period of review, making the question of their exclusion meaningless. AD I&D Mem., Cmt. 6 at 31.

*B. Countervailing Duty Administrative Review*

In the CVD Review, Jangho was not selected as a mandatory respondent. Final CVD Determination, 79 Fed. Reg. at 78,790.  As a cooperating, non-selected respondent, Jangho's imports were assessed the "non-selected [CVD] rate" for the

---

[13] While Commerce noted that Jangho did not request the Yuanda scope inquiry, it did not discuss what effect this has on Jangho's entries. Id.

period of review. Final CVD Determination, 79 Fed. Reg. at 78,789-90.  Jangho argued, as it had in the AD Review, that its "finished curtain wall unit imports fall outside the scope of the aluminum extrusion orders" and that, if not, "antidumping and countervailing duties may only be assessed on or after the date of initiation of [Commerce's] formal scope inquiry on finished curtain wall units" – that is, the initiation date of the Yuanda scope inquiry, May 10, 2013. Case Br. of [Jangho Before Commerce], C-570-968 (Aug. 18, 2014) at 1, reproduced in Def.'s App., Ct. No. 15-24, ECF No. 35, at Tab 6.  Commerce found that, because Jangho's imports had been suspended prior to the initiation of the Yuanda scope inquiry and were clearly within the Order's scope, Jangho's retroactivity concerns were unfounded, CVD I&D Mem., Cmt. 21 at 91-93, and Jangho's imports were subject to the non-selected CVD rate for the period of review, Final CVD Determination, 79 Fed. Reg. at 78,790.

    *C. Jangho's Appeal to the CIT*

    Jangho appealed both the AD and CVD Final Determinations to this Court. Compl., Ct. No. 15-23, ECF No. 11 (challenging the Final AD Determination); Compl., Ct. No. 15-24 ECF No. 11.[14]  Jangho's motions for judgment on the agency record

---

[14] Jangho's entries during the period of review have not been liquidated pursuant to these Final Determinations because of a preliminary injunction on those entries in Yuanda, Consol. Ct.

    (footnote continued)

pursuant to USCIT Rule 56.2 followed.  See Pl.'s Br., Ct. No. 15-23, ECF No. 31-1; Pl.'s Br., Ct. No. 15-24 ECF No. 32-1.

## STANDARD OF REVIEW

The court will sustain Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  The court will set aside agency actions found to be arbitrary and capricious. Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 284 (1974)).

## DISCUSSION

I.   Jangho's Curtain Wall Products

In making scope rulings, Commerce has "substantial freedom to interpret and clarify" AD and CVD orders. Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096 (Fed. Cir. 2002) (quotation marks and citations omitted).  However, in so doing, Commerce must follow "the methodology set forth in its regulation[s]." Id.[15]  It cannot "interpret[] an order in a manner contrary to the order's terms." Allegheny Bradford Corp.

---

No. 14-106. See Message No. 5026307 (Jan. 26, 2015) reproduced in Ct. No. 15-24 ECF No. 35 at Tab 9.

[15] Commerce has promulgated detailed regulations governing when and how scope rulings are made. See 19 C.F.R. § 351.225.

v. United States, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183
(2004) (citing Duferco Steel, 296 F.3d at 1094—95).  Commerce's
determination must also be supported by a reasonable reading of
the record evidence. 19 U.S.C. § 1516a(b)(1)(B)(i); Nippon Steel
Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).
It must present a "rational connection between the facts found
and the choice made," Burlington Truck Lines, Inc. v. United
States, 371 U.S. 156, 168 (1962), and it cannot be arbitrary and
capricious, Changzhou Wujin, 701 F.3d at 1377.

        Commerce's determination here is not within these
meets and bounds.

        A. *Commerce's Scope Determination Failed to Follow the
           Methodology Set Forth in its Own Regulations.*

        In the Final AD Determination, Commerce identified as
an issue "[w]hether [it] [s]hould [m]ake a [s]cope [r]uling on
Jangho's [c]urtain [w]all [u]nits." AD I&D Mem., Cmt. 6 at 28.
Commerce found that the administrative review was, in both
"procedural and evidentiary" terms, insufficient to make a full
scope determination. AD I&D Mem., Cmt. 6 at 30 (asserting that
Commerce could not determine whether Jangho's merchandise was
properly excluded "as part of a 'finished goods kit,'" without a
scope inquiry).  However, because Jangho had not requested a
scope inquiry pursuant to 19 C.F.R. § 351.225(c), Commerce,
rather than conducting such an inquiry, concluded that Jangho's

merchandise was within the scope of the Orders.  AD I&D Mem.,
Cmt. 6 at 30; see CVD I&D Mem., Cmt. 21 at 91-92 (finding that
assessment of duties prior to a scope inquiry proper because
curtain wall units "were within the scope of the order pursuant
to the unambiguous scope language covering parts for curtain
walls").  The question now is whether this determination is in
accordance with Commerce's own regulations – specifically,
whether the onus to request a scope inquiry lay solely with
Jangho, as Commerce asserts, or whether Commerce, having found
its own determination insufficient, was obligated to self-
initiate a scope inquiry.

> *1. Commerce's Obligation to Initiate a Scope Inquiry*

Commerce conducts scope inquiries and "issues 'scope
rulings'" to "clarify the scope of an [AD or CVD] order." 19
C.F.R. § 351.225(a). Under its own regulations, if Commerce
"determines from available information that an inquiry is
warranted to determine whether a product is included within the
scope of [an order]," Commerce "will initiate an inquiry." 19
C.F.R. § 351.225(b).

Here, Commerce has determined "from available
information that an inquiry is warranted to determine whether
[Jangho's merchandise] is included within the scope of the

[Order].” 19 C.F.R. § 351.225(b); AD I&D Mem., Cmt. 6 at 30.[16]

As such, Commerce was, by its own regulation, obligated to initiate a scope inquiry. 19 C.F.R. § 351.225(b) (providing that if Commerce determines “from available information” that a scope inquiry is warranted, it “will initiate an inquiry”).  The language of the regulation is imperative, not precatory.[17]

Accordingly, Commerce’s failure to initiate a scope inquiry after finding on “available evidence” that a scope inquiry was required, was contrary to the plain language of the regulation and therefore not in accordance with law.[18]

---

[16] In the Final CVD Review Commerce does not so much address the scope issue as conclude that Jangho’s merchandise is unambiguously subject to the Orders such that assessment of duties prior to a scope inquiry is proper. See CVD I&D Mem., Cmt. 21 at 91-93; see AD I&D Mem., Cmt. 5 at 26-28 (same).

[17] Defendant seems to argue that 19 C.F.R. § 351.225(b) allows Commerce to make scope determinations on “available information,” such that Commerce’s decision to include Jangho’s merchandise without a scope inquiry was proper. Tr. of Oral Arg., June 15, 2016, Ct. Nos. 15-23 & 15-24, ECF Nos. 48 & 46, at 28-30.  By its plain language, as discussed above, the regulation does not.  Further, while “the burden falls on the importer to demonstrate that its imported products should be excluded from the scope of an antidumping investigation,” NTN Bearing Corp. of Am. v. United States, 997 F.2d 1453, 1458 (Fed. Cir. 1993) (citations omitted), this burden of production does not discharge Commerce from undertaking the requisite administrative procedures: “[D]iscretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking.” Bennett v. Spear, 520 U.S. 154, 172 (1997).

[18] See Tesoro Hawaii Corp. v. United States, 405 F.3d 1339, 1347 (Fed. Cir. 2005) (“When there is no ambiguity in the meaning of the regulation, ‘it is the duty of the courts to enforce it
(footnote continued)

*2. Jangho's Obligation to Request a Scope Inquiry*

Under the same regulation, "[a]ny interested party" may request a scope ruling. 19 C.F.R. § 351.225(c).  While 19 C.F.R. § 351.225(c) "provides a detailed process for filing scope ruling requests," interested parties may make "use of the administrative review process as an avenue for challenging the scope of [AD and CVD] orders." Mukand Int'l, Ltd. v. United States, 29 CIT 1526, 1535 n. 11, 412 F. Supp. 2d 1312, 1319 n. 11 (2005), aff'd, 502 F.3d 1366 (Fed. Cir. 2007) (internal citation omitted).[19]  Indeed, where, as here, a scope issue arises in the course of an administrative review, Commerce has the express authority to "conduct [a] scope inquiry in conjunction with that review." 19 C.F.R. § 351.225(f)(6).

When addressing scope issues in the course of a review, Commerce must "utilize[] and abide[] by the statutory and regulatory provisions that authorize [it] to investigate [scope issues]." AMS Assocs, 737 F.3d at 1344.  If "the meaning and scope of an existing antidumping order is clear," then

according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision.'" (quoting Gibson v. United States, 194 U.S. 182, 185 (1904)).

[19] Cf. AMS Assocs., Inc. v. United States, 737 F.3d 1338, 1340 (Fed. Cir. 2013) (finding that Commerce, wrongly, "chose not to initiate a formal scope inquiry pursuant to 19 C.F.R. § 351.225 . . . despite requests by [plaintiff]" in the course of an administrative review).

Commerce need not "initiate a formal scope inquiry," id., and may make the determination in the course of the review, Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1378–79 (Fed. Cir. 2003) (holding that a formal scope inquiry and ruling was unnecessary when Commerce's determination "neither changed the companies entitled to the decreased rate, nor modified the type of products covered by the . . . order"); Xerox Corp. v. United States, 289 F.3d 792, 795 (Fed. Cir. 2002) (holding formal scope inquiry unnecessary where the product at issue was "clearly outside the order" such that "the scope of the order [was] not in question").  If, however, as Commerce has concluded here, the agency cannot resolve the scope issue "on the basis of the plain language of the scope description or the clear history of the original investigation," Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,328 (Dep't of Commerce May 19, 1997) (providing the administrative history of 19 C.F.R. § 351.225), if "the scope of the original [] order [is] unclear," then Commerce must conduct a formal scope inquiry, AMS Assocs., 737 F.3d at 1344.

Here, Plaintiff has used, as it may, the administrative review process to challenge the scope of the Orders with regard to its own merchandise. Mukand Int'l, 29 CIT at 1535 n. 11, 412 F. Supp. 2d at 1319 n. 11, aff'd, 502 F.3d

1366.[20]  The onus was then on Commerce to address the issue,

whether in the review itself, or, if necessary, in a formal

scope inquiry. AMS Associates, 737 F.3d at 1344.

Where, as here, Commerce cannot resolve the scope

issue presented by Plaintiffs on the "plain language" or "clear

---

[20] Defendant seems to argue that (1) Jangho raised the issue only
with respect to Yuanda's merchandise, and (2) if Jangho raised
the issue with respect to its own merchandise, it was not
sufficient – it had to expressly request its own scope inquiry.
See Tr. of Oral Arg., June 15, 2016, Ct. Nos. 15-23 & 15-24, ECF
Nos. 48 & 46, at 31-33.

    The first is directly contrary to the record. See, e.g.,
Jangho's Sect. A Questionnaire Resp., Ct. No. 15-23, ECF No. 35,
at Tab 4, at A-2. ("Please note that for reasons explained in
detail to [Commerce] in the pending [Yuanda] scope inquiry on
finished curtain wall units from China, *Jangho's imported
finished curtain wall units . . . fall outside the scope of the
aluminum extrusions orders*." (emphasis added)); [Jangho] Case
Br. [before Commerce], Ct. No. 15-23, ECF No. 35-5 at Tab 36
(arguing that Jangho's merchandise, not Yuanda's, is not subject
merchandise); Case Br. of [Jangho Before Commerce], Ct. No. 15-
24, ECF No. 35 at Tab 6, at 1 ("[I]t is Jangho's view that its
finished curtain wall unit imports fall outside the scope of the
aluminum extrusions orders . . . ."), 2-4 (arguing that duties
should not be assessed on Jangho's entries prior to the
initiation of a formal scope inquiry given the ambiguity of the
Orders). Indeed, Plaintiff has argued persistently to Commerce,
since at least November 2012, that its curtain wall imports fall
outside the scope of the Orders – not only here, but in two
formal scope determinations, CWC Scope Ruling; Yuanda Scope
Ruling, and in the resultant challenges to those determinations
both before this Court and the CAFC, Yuanda I, __ CIT __, 961 F.
Supp. 2d 1291; Yuanda II, 776 F.3d 1351; Yuanda III, __ CIT __,
146 F.Supp.3d 1331.

    The second is incorrect.  Specifically, interested parties
may raise and argue issues of scope during administrative
reviews, Mukand Int'l, 29 CIT at 1535 n. 11, 412 F. Supp. 2d at
1319 n. 11, aff'd, 502 F.3d 1366, and Commerce must address such
issues in keeping with its statutory and regulatory obligations.
AMS Assocs., 737 F.3d at 1344.

history" of the Orders, <u>Antidumping Duties; Countervailing Duties</u>, 62 Fed. Reg. at 27,327-28, where Commerce's own decision "confirm[s] this lack of clarity," <u>AMS Associates</u>, 737 F.3d at 1344, Commerce must "conduct a formal scope inquiry" before it finds Plaintiff's merchandise within the scope of the Order, <u>id.</u> at 1340.[21]

Accordingly, by failing to adequately address the scope issue after Plaintiff raised it in the course of an administrative review, by failing to initiate a scope inquiry after finding one necessary, Commerce has failed to follow "the methodology set forth in its [own] regulation." <u>See</u> <u>Duferco Steel</u>, 296 F.3d at 1096.

>   B. *Commerce's Scope Analysis is Not Based on a Reasonable Reading of the Record Evidence.*

In addition to its procedural insufficiencies, Commerce's scope determination is substantively flawed. Commerce has determined that Jangho's merchandise is within the

---

[21] As such, Defendant's concern that Commerce will be obligated to initiate a scope inquiry for "everyone who's made an assertion that they're not subject to the order," Tr. of Oral Arg., June 15, 2016, Ct. Nos. 15-23 & 15-24, ECF Nos. 48 & 46, at 34, is unfounded.  As the CAFC has already explained, "[i]mporters cannot circumvent antidumping orders by contending that their products are outside the scope of existing orders when such orders are clear as to their scope.  Our precedent evinces this understanding. We have not required Commerce to initiate a formal scope inquiry when the meaning and scope of an existing antidumping order is clear." <u>AMS Assocs.</u>, 737 F.3d at 1344 (citations omitted).

scope of and subject to the Orders. AD I&D Mem., Cmt. 6 at 30;

CVD I&D Mem., Cmt. 21 at 91 (finding Jangho's merchandise

"properly subject to [the CVD] review"), 92 (citing to the

Yuanda Scope Ruling to establish that the Orders unambiguously

include "certain curtain wall units" under their "parts for

curtain walls" provision, rendering proper the suspension of

liquidation for Jangho's entries prior to the initiation of that

scope inquiry).  However, this determination cannot be sustained

because it is not supported by any record evidence, much less a

reasonable reading thereof. See Nippon Steel, 458 F.3d at 1351.[22]

Commerce asserts that Plaintiff imports "stand alone

parts of a curtain wall," and makes its findings based on that

assertion, but the agency does not cite to any evidence or

provide any description of the actual product at issue. AD I&D

Mem., Cmt. 6 at 30-31; see CVD I&D Mem., Cmt. 21 at 91-92.

---

[22] Plaintiff attempts to "incorporate by reference the arguments"
it made about the scope of the Orders as a consolidated
plaintiff in another, related, proceeding, Shenyang Yuanda
Aluminum Industry Engineering Co. v. United States, Consol. Ct.
No. 14-00106. Pl.'s Br., Case No. 15-23, ECF No. 31-1, at 9.
Such incorporation, as Defendant argues, is improper. See United
States v. Great Am. Ins. Co. of New York, 738 F.3d 1320, 1328
(Fed. Cir. 2013) ("It is well established that arguments that
are not appropriately developed in a party's briefing may be
deemed waived."). However, as Plaintiff points out, this is of
little relevance here because Plaintiff, in addition to
"incorporating by reference," has raised much of these arguments
here. Pl.'s Rule 56.2 Reply Br., Ct No. 15-23, ECF No. 39, at 9-
10. Accordingly, Plaintiff's arguments as raised and relevant
here are considered infra.

Commerce's analysis is not tethered in any way to the

administrative record.[23]   Commerce "must make findings that

support its decision, and those finding must be supported by

substantial evidence." Burlington Truck Lines, 371 U.S. at 168

(citations omitted).

>    *C. Commerce's determination was arbitrary and*
>    *capricious.*

>    Commerce does not address Plaintiff's arguments both

here and below, that inclusion of its unitized curtain wall

---

[23] Indeed, the evidence in the record seems to indicate that
Jangho imports complete curtain wall units pursuant to a
contract to supply a curtain wall, Yuanda III, __ CIT at __, 146
F.Supp.3d at 1339-40; Yuanda Scope Ruling at 1, 6-7, rather than
stand alone parts thereof, Yuanda II, 776 F.3d at 1357-58
(citing Yuanda I, __ CIT __, 961 F. Supp. 2d at 1298-99); CWC
Scope Ruling at 3, 10 . See [Jangho] Separate Rate Application,
Ct. No. 15-23, ECF No. 35, at Tab 3 at 6 ("Jangho America sells
curtain wall units and installation. The company is awarded a
bid on a particular project. Jangho America is paid based upon
the terms of contract relating to a specific project."); 
Jangho's Sect. A Questionnaire Resp., Ct. No. 15-23, ECF No. 35,
at Tab 5 at A-8 ("The sales and negotiation process for Jangho
is as follows. Jangho Americas bids on projects to sell and
install curtain wall units. When awarded a bid, Jangho Americas
enters into a contract with the building contractor for the
project."); Jangho's Sect. A Questionnaire Resp., Ct. No. 15-23,
ECF No. 35, at Tab 6 at A-17-A-18 ("Jangho produces and exports
finished curtain wall units. The finished curtain wall units are
designed and manufactured to meet the needs of a specific
project. A finished curtain wall unit is an architecturally
designed product, similar to a window, used as an outer covering
of a building.").

This uncertainty is magnified by Commerce's discussion in
AD I&D Mem., Cmt. 5 at 27 and CVD I&D Mem., Cmt. 21 at 92, where
Commerce likens Jangho's products to both those at issue in the
Yuanda Scope Ruling and Yuanda I to find those decisions
applicable.

imports within the scope of the Orders is inconsistent with
Commerce's determination that window wall imports are excluded
from that same scope[24] because the products are "virtually
identical." Pl.'s Br., Ct. No. 15-23, ECF No. 31-1, at 13-14;
see [Jangho] Case Br. [before Commerce], Ct. No. 15-23, ECF No.
35-5 at Tab 36, at 4-5.  By not addressing this argument,
Commerce has "entirely failed to consider an important aspect of
the problem." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State
Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).[25]  Indeed, by
failing to offer any explanation for the distinction drawn
between unitized curtain walls and window walls, Commerce has
treated similarly situated products differently "without
reasonable explanation." See Consol. Bearings Co. v. United
States, 348 F.3d 997, 1007 (Fed. Cir. 2003) (citation omitted).
This renders Commerce's determination arbitrary and capricious.

II.   The Applicability of the Yuanda Scope Ruling

        Plaintiff has persistently argued that there is a
relevant scope ruling covering its merchandise, one that it

---

[24] See Aluminum Extrusions from the [PRC], Final Scope Ruling, A-
570-967 & C-570-968 (Dep't of Commerce June 19, 2014) (final
scope ruling on finished window [wall] kits) ("NR Window
Walls"), at 1.

[25] See Yuanda III, __ CIT at __, 146 F.Supp.3d at 1352-54
(holding that Commerce's determination that unitized curtain
walls are within the scope of the Orders and window walls are
not, "[drew] an arbitrary distinction between window walls and
curtain walls").

fully participated in as an interested party importing the same
product as the applicant, the Yuanda Scope Ruling (as modified
by subsequent litigation). Pl.'s Rule 56.2 Reply Br., Ct No. 15-
23, ECF No. 39, at 9-10.  Commerce, without analysis or support,
determined below that "scope rulings" *per se* "apply only to
specific merchandise from a specific importer or exporter,"
faulting Jangho for not requesting a "scope ruling covering its
specific merchandise." AD I&D Mem., Cmt. 6 at 30-31. Here, it
argues that, because the Yuanda Scope Ruling is based on facts
particular to Yuanda, the ruling cannot apply to Jangho. Def.'s
Resp., Ct. No. 15-23, ECF No. 34, at 22-23; Def.'s Resp., Ct.
No. 15-24, ECF No. 34, at 14.

> *A. The plain language of the regulation indicates that
> scope rulings are product not party specific.*

An agency is bound by the unambiguous, plain meaning
of its own regulations.[26]  Plain meaning is a function of
context,[27] discerned from "the text of the regulation as a
whole," Lengerich v. Dep't of Interior, 454 F.3d 1367, 1370
(Fed. Cir. 2006) (citing Bowles v. Seminole Rock & Sand Co., 325

---

[26] Roberto v. Dep't of Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006)
("If the regulatory language is clear and unambiguous, the
inquiry ends with the plain meaning. However, if the regulation
is silent or ambiguous, the court then gives deference to the
agency's own interpretations." (citation omitted)).

[27] See Beecham v. United States, 511 U.S. 368, 372 (1994) ("The
plain meaning that we seek to discern is the plain meaning of
the whole statute, not of isolated sentences.").

U.S. 410, 414-15 (1945)), with an eye to its "object and
policy." Ethicon Endo-Surgery, Inc. v. Covidien LP, 812 F.3d
1023, 1040 (Fed. Cir. 2016) (internal quotation marks and
citation omitted).

Here, by the plain language of the regulation, scope
rulings are issued with respect to "particular products," 19
C.F.R. § 351.225(a),[28] not particular interested parties,
producers or importers.[29]  When Commerce self-initiates a scope
inquiry it is because there are questions as to whether "a
product is included within the scope of an [order]." 19 C.F.R. §
351.225(b).  "[A]ny interested party," may request a scope
ruling to determine whether "a particular product" is "within
the scope of an order." 19 C.F.R. § 351.225(c)(1).  The
regulation uses the indefinite article, not the possessive: an

---

[28] See 19 C.F.R. § 351.225(b) (Commerce may self-initiate a scope
inquiry "to determine whether a product is included within the
scope of an antidumping or countervailing duty order."); 19
C.F.R. § 351.225(c)(1) ("Any interested party may apply for a
ruling as to whether a particular product is within the scope of
an order or a suspended investigation."); 19 C.F.R. §
351.225(c)(1)(i) (The application "must contain . . . to the
extent reasonably available to the interested party . . . [a]
detailed description of the product, including its technical
characteristics and uses, and its current U.S. Tariff
Classification number.")

[29] Commerce's product-centered language here contrasts with
Commerce's producer or importer-focused language elsewhere. See,
e.g., 19 C.F.R. § 351.107 (providing for, in direct, clear
language, the establishment of producer and/or exporter specific
cash deposit rates).

interested party requests a scope ruling for "a particular

product," not "its particular product." Indeed, "any interested

party" includes interests and entities that do not have their

own entries or merchandise,[30] that is, no product particular

solely to them upon which to premise a scope ruling request.[31]

_____

[30] Commerce defines "interested party" as "(i) [a] foreign
manufacturer, producer, or exporter of subject merchandise; (ii)
The United States importer of subject merchandise; (iii) A trade
or business association a majority of the members of which are
producers, exporters, or importers of subject merchandise; (iv)
The government of a country in which subject merchandise is
produced or manufactured or from which such merchandise is
exported; (v) A manufacturer, producer, or wholesaler in the
United States of a domestic like product; (vi) A certified union
or recognized union or group of workers which is representative
of an industry engaged in the manufacture, production, or
wholesale in the United States of a domestic like product, (vii)
A trade or business association a majority of whose members
manufacture, produce, or wholesale a domestic like product in
the United States, (viii) An association, a majority of whose
members is composed of interested parties described in
subparagraph (C), (D), or (E) of section 771(9) of the Act with
respect to a domestic like product, and (ix) A coalition or
trade association as described in section 771(9)(G) of the Act."
19 C.F.R. § 351.102(b)(29).

[31] Indeed, it is unclear what purpose the CWC Scope Ruling could
possibly serve other than to apply to the products of other
parties, given that the CWC represents domestic interests that
do not import any product. See CWC Scope Ruling at 2.

    In a footnote, Defendant acknowledges this conflict,
arguing that "[s]cope rulings issued to producers, exporters or
importers apply specifically to the requesting party as the
ruling is based on the particular facts and situation of that
requesting party.  In contrast, rulings requested by the
domestic manufacturers apply generally to the merchandise
reviewed." Def.'s Resp., Ct. No. 15-23, ECF No. 34, at 23 n. 4.
Defendants cites solely to the Yuanda Scope Ruling (as applying
only to Yuanda) and the CWC Scope ruling (applying to all
curtain wall imports) as examples. Id.

                                    (footnote continued)

At no point does the regulation instruct Commerce to consider

who produced or imported the product as part of what the

regulation defines as "particular."  Rather, a scope ruling

application must include "to the extent reasonably available to

the interested party . . . [a] detailed description of the

product, including its technical characteristics and uses, and

its current U.S. Tariff Classification number." 19 C.F.R. §

351.225(c)(1)(i).  Scope rulings on the application are made on

the basis of that detailed description in conjunction with "the

descriptions of the merchandise" as contained in the regulatory

history. Mid Continent Nail Corp. v. United States, 725 F.3d

1295, 1302 (Fed. Cir. 2013) (citing 19 C.F.R. § 351.225(k)(1)).[32]

---

Given Commerce's own lack of explanation, Defendant's
statement is "nothing more than . . . a *post hoc* rationalization
advanced" by counsel in order "to defend past agency action
against attack." Christopher v. SmithKline Beecham Corp., 132 S.
Ct. 2156, 2166-67 (2012) (internal citations, quotation marks,
and alteration marks omitted).  It is therefore entitled to no
deference beyond its power to persuade. United States v. Mead
Corp., 533 U.S. 218, 228 (2001) (quoting Skidmore v. Swift &
Co., 323 U.S. 134, 140 (1944)).

"In any event, '[a]rguments raised only in footnotes . . .
are waived.'" Kennametal, Inc. v. Ingersoll Cutting Tool Co.,
780 F.3d 1376, 1383 (Fed. Cir. 2015) (quoting Otsuka Pharm. Co.
v. Sandoz, Inc., 678 F.3d 1280, 1294 (Fed. Cir. 2012)).
Commerce must set forth the basis of its decisions "with such
clarity as to be understandable," as "[i]t will not do for a
court to be compelled to guess at the theory underlying the
agency's action." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S.
194, 196-97 (1947).

[32] Specifically, Commerce considers "[t]he descriptions of the
merchandise contained in the petition, [the] initial
(footnote continued)

Further, this reading is in keeping with the purpose of the regulation itself – clarity of scope and predictability of administration[33] – and the statutory framework in which it operates, specifically the allocation of authority between Commerce and CBP.[34]

---

investigation, and the determinations of [Commerce] (including prior scope determinations) and the [International Trade] Commission." 19 C.F.R. § 351.225(k)(1).  If these detailed descriptions are not dispositive, Commerce will consider the "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2).

[33] The object of scope rulings is to "clarify the scope of an order." 19 C.F.R. § 351.225(a).  Commerce's asserted purpose in promulgating 19 C.F.R. § 351.225 was to "translate the principles of the implementing legislation into specific and predictable rules, thereby facilitating the administration of these laws and providing greater predictability for private parties affected by these laws." Antidumping Duties; Countervailing Duties, 62 Fed. Reg. at 27,296.

[34] Applying Commerce's substantive determinations to the facts of a particular entry or entries is one of Custom's central functions. See LDA Incorporado v. United States, __ CIT __, 79 F. Supp. 3d 1331, 1340 (2015) ("The factual analysis and application of the scope to the goods in question are decisions of Customs."); see Reorganization Plan No. 3 of 1979, 44 Fed. Reg. 69,273, 69,274-75 (Dec. 3, 1979), effective under Exec. Order No. 12,188 of January 2, 1980, 45 Fed. Reg. 989, 993 (1980).  "While Congress gave the role of determining the scope of an antidumping or countervailing duty order to Commerce, CBP, incident to its function of fixing the amount of duties chargeable, must make factual findings to determine 'what the merchandise is, and whether it is described in an order.'" Sunpreme Inc. v. United States, __ CIT __, 145 F. Supp. 3d 1271, 1284-85 (2016) (quoting Xerox, 289 F.3d at 794-95; citing 19 U.S.C. § 1516a(2)(B)(vi); 19 U.S.C. § 1677(25)).

As such, Commerce's unsupported assertion that its "scope rulings" *per se* "apply only to specific merchandise from a specific importer or exporter," AD I&D Mem., Cmt. 6 at 31, is contrary to the unambiguous language of the controlling regulation, 19 C.F.R. § 351.225.  Moreover, it is directly contrary to the purpose of the regulation and undermines the statutory allocation of authority between Commerce and Customs for the agency to insist, as Defendant does, that interested parties cannot rely on Commerce's determinations, but rather that such parties, "even CBP itself," must take a "gamble" or "a chance" when they "look to Commerce's previous scope rulings for guidance in determining whether to declare merchandise at the border as subject, or not subject, to an antidumping order." Def.'s Resp., Ct. No. 15-23, ECF No. 34, at 15-17 (discussing the applicability of a window wall scope ruling to Plaintiffs' alleged widow wall imports, see *infra*).

Accordingly, Commerce's *per se* restriction of its scope ruling to a particular interested party rather than to a particular product is contrary to the plain language of the regulation.

> B. *Commerce's Determination regarding the inapplicability of the Yuanda Scope Ruling is Unreasonable.*

While each scope ruling must be made "upon the facts and circumstances of the specific case before it," if the facts and circumstances of another interested party are the same,

Commerce "must remain consistent and any deviations must be explained." Mid Continent Nail Corp. v. United States, __ CIT __, 770 F. Supp. 2d 1372, 1382 (2011) (citing SKF USA Inc. v. United States, 630 F.3d 1365, 1373 (Fed. Cir. 2011)).

Below, Commerce did not directly address the applicability of the Yuanda Scope Ruling.[35] Before the court, Defendant now argues that, because the Yuanda Scope Ruling is based on "information particular to Yuanda," it cannot apply to Jangho, Def.'s Resp., Ct. No. 15-24, ECF No. 34, at 14 – that is, the facts that make the product particular are particular to Yuanda. However, because Commerce did not make any factual findings based on the record – however limited – to define Jangho's merchandise, much less explain why it is substantively different from Yuanda's merchandise (and therefore should be subject to substantively different treatment),[36] this argument cannot hold. "Commerce is obligated to follow prior precedent absent some legitimate reason for departing from it." Belgium v.

---

[35] Instead, Commerce faults Jangho for failing to request "a scope ruling covering its specific merchandise," AD I&D Mem., Cmt. 6 at 30, while also using the Yuanda Scope Ruling and this Court's affirmance of the CWC Scope Ruling in Yuanda I, to support its determination that "certain curtain wall units" were "within the scope of the [Orders] pursuant to the unambiguous scope language," such that suspension of (and therefore assessment of duties on) Jangho's entries prior to initiation of that scope inquiry was proper under AMS Assocs., 737 F.3d 1338, AD I&D Mem., Cmt. 5 at 27; CVD I&D Mem., Cmt. 21 at 92.

[36] See supra Discussion Section I Part C.

United States, 551 F.3d 1339, 1349 (Fed. Cir. 2009).[37]  Commerce

has not provided a legitimate reason – or any reason – here.  If

Commerce finds that it lacks sufficient factual information, it

may reopen the record[38] or even initiate a scope inquiry for

Jangho[39] in keeping with its regulatory obligation,[40] but it may

not assert the inapplicability of the Yuanda Scope Ruling

because of factual differences without providing a reasonable

basis on the record for such a finding.[41]

   *C. The Procedural Effect of the Yuanda Scope Ruling*

        While Plaintiff and Defendant both argue at length

over the issue of whether or not Jangho's merchandise is

---

[37] Defendant goes so far as to argue that there is "simply no basis in statute or regulation [to find that] all of Commerce's scope rulings are somehow binding on all physically similar products, no matter the identity of the exporter or importer, or unique facts particular to the sale and shipment of the merchandise at issue." Def.'s Resp., Ct. No. 15-23, ECF No. 34, at 17.  Defendant ignores the agency's obligation to take actions and render decisions that are neither arbitrary nor capricious. Changzhou Wujin, 701 F.3d at 1377.  An agency action is "arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." RHP Bearings Ltd. v. United States, 288 F.3d 1334, 1347 (Fed. Cir. 2002) (internal quotation marks and citation omitted).

[38] 19 C.F.R. § 351.301(c)(4) ("The Department may place factual information on the record of the [antidumping or countervailing duty] proceeding at any time.").

[39] See 19 C.F.R. §§ 351.225(b), (f)(6).

[40] See *supra* Discussion Section I Part A.

[41] Cf. 19 C.F.R. § 351.225(k)(1) (instructing Commerce to consider "prior scope determinations" when the scope language of an order is unclear).

properly suspended pursuant to 19 C.F.R. § 351.225(l),[42] since
Commerce has yet to determine whether Jangho's products may be
properly considered within the scope of the Orders, or whether
the Yuanda or CWC Scope Ruling applies, this question is not yet
ripe for consideration. See AT&T Corp. v. Iowa Utilities Bd.,
525 U.S. 366, 386 (1999).[43]

III.   Jangho's Window Wall Products

        Plaintiff argues that its window wall imports should
also be excluded from the scope of the AD Order, and hence the
second AD administrative review, pursuant to Commerce's decision
in NR Window Walls.  Pl.'s Br., Ct. No. 15-23, ECF No. 31-1, at
15-18.  In the administrative review, however, Commerce found
that there was no evidence on the record indicating that Jangho
had actually imported window wall units during the period of
review, and, as such, questions of scope were irrelevant. AD I&D
Mem., Cmt. 6 at 31.[44]  To counter Commerce's finding, Plaintiff

---

[42] Pl.'s Br., Ct. No. 15-23, ECF No. 31-1, at 18-23; Pl.'s Br.,
Ct. No. 15-24, ECF No. 32-1, at 6-14; Def.'s Resp., Ct. No. 15-
23, ECF No 34, at 21-28; Def.'s Resp., Ct. No. 15-24, ECF No.
34, at 11-21.

[43] Indeed, if Jangho's merchandise is found outside the scope of
the order, Commerce has no authority to assess duties on those
entries not yet liquidated. See Belgium, 551 F.3d at 1349-50.

[44] Commerce further concluded that, even if Jangho had imported
such units, those imports would still be subject to the order,
regardless of the existing scope ruling excluding window wall
units, because Jangho had not requested a scope ruling specific
to its products. Id.

now offers a collection of cites to the record that, it claims, establishes that some of its entries were window wall units. Pl.'s Br., Ct. No. 15-23, ECF No. 31-1, at 15-17.

  *A. Plaintiff failed to exhaust its administrative remedies with regard to its factual arguments.*

  A plaintiff must exhaust administrative remedies before seeking judicial relief. Sandvik Steel Co. v. United States, 164 F.3d 596, 599 (Fed.Cir.1998); see 28 U.S.C. § 2637(d).  This applies "with particular force" where, as here and in trade cases more generally, "the agency [applies] its special expertise," Corus Staal BV v. United States, 502 F.3d 1370, 1379-80 (Fed. Cir. 2007) (internal citation and quotation marks omitted). This "protects[s] the agency's interest in being the initial decision maker in implementing the statutes defining its tasks," and promotes the "development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution." Itochu Bldg. Products v. United States, 733 F.3d 1140, 1145 (Fed. Cir. 2013) (internal citations omitted).

  Here, while Plaintiff did argue before Commerce that its window wall units should be excluded, Plaintiff did not establish that it had actually imported window wall units during the period of review. [Jangho] Case Br. [before Commerce], Ct. No. 15-23, ECF No. 35-5, at Tab 36 at 6.  Even if, as Plaintiff

now argues,[45] the administrative record contains direct, but non-obvious evidence of Jangho's window wall imports, Plaintiff has not developed its argument so that Commerce could be the "initial decisionmaker" and build a record of agency decision making adequate for judicial review. See Itochu, 733 F.3d at 1145.  Plaintiff had and took the opportunity to raise its window wall unit argument before Commerce; the onus was on the Plaintiff to develop that argument and direct Commerce to the pertinent facts.  It did not, and, as such, it failed to exhaust its administrative remedies, with regard to those missed or omitted factual arguments, without valid excuse or exception. See Corus Staal, 502 F.3d at 1380-81; Essar Steel, Ltd. v. United States, 753 F.3d 1368, 1375 (Fed. Cir. 2014); Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1380-81 (Fed. Cir. 2013).

---

[45] Plaintiff argues now that "the administrative record . . . contains direct evidence of Jangho's window wall imports" – though none of that evidence is obvious because "Commerce's questionnaires never requested Jangho report by name the final end product being imported into the United States." Pl.'s Br., Ct. No. 15-23, ECF No. 31-1, at 15.  However, Commerce did, in clear contradiction to Plaintiff's excuse, request that Jangho "[p]rovide a description of the types of merchandise under consideration produced and/or sold by [Jangho]." Jangho's Sect. A Questionnaire Resp., Ct. No. 15-23, ECF No. 35, at Tab 6 at A-17.  Jangho answered that it "produce[d] and export[ed] finished curtain wall units." Id.

> B. *Commerce's finding that Jangho did not import window*
> *wall units during the period of review was based on a*
> *reasonable reading of the record evidence.*

Commerce, lacking any record evidence to indicate

otherwise, concluded that Jangho had not produced window walls

during the period of review. AD I&D mem., Cmt 6 at 31.

Commerce's determination is reasonable on the record evidence,

even if the court were to consider Plaintiff's new factual

arguments.  Plaintiff points to a collection of indirect

references and images that might suggest that Jangho produced

windows or window walls at some point. See Pl.'s Br., Ct. No.

15-23, ECF No. 31-1, at 15-16; Pl.'s Rule 56.2 Reply Br., Ct No.

15-23, ECF No. 39, at 5-7.  In contrast, throughout its

questionnaire responses Jangho refers to its product as

"finished curtain wall units," or some variation thereon,

without reference to window wall products.[46]  When asked directly

to describe the merchandise at issue, Jangho answered that it

"produces and exports finished curtain wall units," without

mention of window wall units. Jangho's Sect. A Questionnaire

Resp., Ct. No. 15-23, ECF No. 35, at Tab 6 at A-17.  Considering

---

[46] See, e.g., [Jangho] Separate Rate Application, Ct. No. 15-23,
ECF No. 35, at Tab 3 at 6; Jangho's Sect. A Questionnaire Resp.,
Ct. No. 15-23, ECF Nos. 35 & 35-1, at Tabs 4-6, 8, at A-2, A-8,
A-17-A-18, A-20, Ex. A-11 (Sample Transaction Documents;
[Jangho's] Sect. C Questionnaire Resp., A-570-967 (Dec. 9, 2013)
at C-22 reproduced in Def.'s App., ECF No 35-2 at Tab 23;
[Jangho's] Sect. D Questionnaire Resp., A-570-967 (Dec. 12,
2013) at D-7 reproduced in Def.'s App., ECF No 35-3 at Tab 28.

the record as a whole, Commerce's finding was reasonable, and must be sustained. See Nippon Steel, 458 F.3d at 1351.[47]

## CONCLUSION

For the foregoing reasoning, Commerce's determination is affirmed in part and remanded in part.

The court remands to Commerce for further consideration in accordance with this opinion.  Commerce shall have until October 28, 2016 to complete and file its remand redetermination.  Plaintiffs shall have until November 10, 2016 to file comments.  Defendant and Defendant-Intervenor shall have until November 21, 2016 to file any reply.

IT IS SO ORDERED.

/s/Donald C. Pogue
_____
Donald C. Pogue, Senior Judge

Dated: September 19, 2016
New York, NY

---

[47] Because Commerce's determination that Jangho did not import window wall units during the period of review was based on a reasonable reading of the record evidence, the court does not reach the question of whether Jangho's window wall imports should be excluded in keeping with NR Window Walls.